# Exhibit A

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT |

| | |
|---|---|
| Ralph Mervine, | Case Type: Employment Civil |
| | Court File No.: _____ |
| Plaintiff, | |
| vs. | **SUMMONS** |
| Plant Engineering Services, LLC, | |
| Defendant. | |

THIS SUMMONS IS DIRECTED TO DEFENDANT PLANT ENGINEERING SERVICES, LLC, AND ITS REGISTERED AGENT OF SERVICE, Corporation Service Company, 380 Jackson Street, Suite 700, Saint Paul, Minnesota 55101:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   HALUNEN & ASSOCIATES
   1650 IDS Center
   80 South Eighth Street
   Minneapolis, MN 55402
   Telephone: 612-605-4098
   Facsimile: 612-605-4099

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: July 14, 2014

HALUNEN & ASSOCIATES

Clayton Halunen, Atty. No. 219721
Ross D. Stadheim, Atty. No. 0392475
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

*ATTORNEYS FOR PLAINTIFF*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT |

Court File No.:_____

Ralph Mervine,

    Plaintiff,

v.

Plant Engineering Services, LLC,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Ralph Mervine ("Plaintiff"), for his Complaint against Plant Engineering Services, LLC, ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is resident of the City of Mulberry, County of Polk, State of Florida.

2. Defendant is a wholly-owned subsidiary of the Fluor Corporation. Defendant's headquarters is located in the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.

3. During the time of Plaintiff's termination, he lived in the State of Minnesota and worked at the Pine Bend Refinery owned by Flint Hills Resources ("FHR"), located in the City of Rosemount, County of Dakota, State of Minnesota.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked as violations occurred in the State of Minnesota and involve state law.

5.   Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and a substantial amount of the facts giving rise to this action occurred within the borders of the State of Minnesota, County of Dakota.

## FACTS

6.   Plaintiff was employed by Defendant from May 29, 2012 to February 20, 2014 as a Project Engineer – Project Manager III. From May 29, 2012 to March 31, 2013, he worked on Alcoa Fire Restoration Project for Defendant in Massena, New York.

7.   On April 1, 2013, Plaintiff was transferred to manage 225 engineering projects and 72 employees at the Pine Bend Refinery in Rosemount, Minnesota, owned by FHR, a subsidiary of Koch Industries.

8.   Throughout the course of his employment, Plaintiff's performance was stellar. Shortly after his arrival at FHR, several FHR managers told Plaintiff that they were very unhappy with the services Defendant was providing, so much so that FHR was within three months of cancelling its contract with Defendant. Realizing the urgency of this situation, Plaintiff put his over 25 years of experience in construction and engineering management, which has taken him all across the world, to work. When he started, 48 of the 225 projects were significantly, meaning more than 2 weeks, behind schedule. On the day of his termination, February 20, 2014, only 6 of those projects were behind. Similarly, just 9 months into the job, Plaintiff's group increased their revenue by 15%, which allowed management to approve the hire of eleven more subordinates.

9.   On December 13, 2013, Plaintiff received an overwhelmingly positive annual review from Joe Picou, Director of Operations. In relevant part, that review stated "[e]xcellence is evident in everything Ralph does in his role as Site Manager and he maintains the same

expectation of his team members." Not surprisingly, Plaintiff was never coached, counseled, or warned – pursuant to Defendant's progressive discipline policy.

10.     Also in December 2013, Plaintiff had several conversations with his two supervisors, Picou and William "Bill" Hicks, Executive Director – Operations, regarding Picou's desire to recover the "quarterly bonus" FHR was paying twenty of Defendant's employees. Plaintiff investigated and asked Hicks if this was possible. Hicks emailed Plaintiff back and wrote that Fluor, Defendant's parent company, already received this money from FHR delegated specifically for the twenty employees' quarterly bonuses. This meant that any increase in payments made to Defendant's employees would need to be approved by FHR under the terms of their contract. Satisfied with Hicks' answer, Plaintiff informed Picou that this was not possible.

11.     On January 29, 2014, Picou sent Plaintiff an email informing him that he received a 4.5% raise and a promotion from Project Manager III to IV. Immediately after, Plaintiff received notification that a conference call had been scheduled for 2:00 p.m. regarding the previously discussed quarterly bonus issue. On the call with Plaintiff was Picou, Hicks, Jason Kreuiter, Human Resources Lead, and Michael Sullivan, Financial Services. Picou began the conversation by demanding that Plaintiff ask FHR for a contract increase for an unspecified reason. Knowing that Fluor was already billing FHR for this quarterly bonus money, Plaintiff firmly stated that he could not do this because if it were approved under false pretenses, it would constitute "double billing." Picou then asked Hicks for clarification. Hicks again confirmed that Fluor was already collecting this money for the quarterly bonuses. Recognizing the problem, Plaintiff responded in and offered a reasonable solution – show FHR exactly what the increase was for. Both Picou

and Kreuiter then vehemently expressed their disagreement by stating "you cannot tell them what the increase is for," or words similar.

12.     After hearing this, Plaintiff again expressed his disagreement with this plan, Picou and Kreuiter continued to berate him by asking what his "problem" was and demand Plaintiff's consent. Plaintiff then asked for time to re-review the situation, but Picou and Kreuiter continued to demand immediate compliance. Picou then declared that "it is none of the FHR's business what the increase is for." Based on Picou and Kreuiter's intense pressure and Hicks confirming that Fluor was already being paid this money, Plaintiff finally responded, "I know Fluor has high ethical standards but I am being asked to do something that is unethical and illegal." After hearing this, Picou immediately went on the defensive yelling "whoa" four times and stating "I don't appreciate being told I'm doing something unethical or illegal." Picou then terminated the call.

13.     On January 30, 2014, Plaintiff picked up Hicks, who had also been previously scheduled to come to Minnesota, at the Minneapolis – St. Paul International Airport. After Hicks got into Plaintiff's vehicle, Plaintiff asked about the conference call. Hicks confirmed that Picou was extremely angry and stated "it will be a long time before he gets over that one." Plaintiff then told Hicks that he was concerned that Picou would retaliate against him for his refusal to engage in, what he identified to be, illegal activity and asked if it would be better if he resigned. Hicks answered, "don't be so pessimistic, they will have to get past me before they fire you." To Plaintiff's surprise, he then was told that Kreuiter would be coming to Minnesota shortly to conduct interviews of certain employee under him. Although Hicks assured him this was "routine," Plaintiff had never heard anything like this and was understandably concerned, given its suspicious timing.

4

14. On February 3, 2014, Plaintiff met with Cathy Robinson, Fluor Financial Services, and informed her of what had transpired on January 29, 2014. He stated, "I'm really in the doghouse for upsetting Picou, but it was my estimation that this was illegal." Excitedly, Robinson declared, "it is!" Being previously informed about this situation in December, she then asked, "how many times do you have to tell him?" Plaintiff indicated his agreement and thanked Robinson.

15. On February 14, 2014, Plaintiff was informed by Kreuiter that he was being suspended for the rest of the day and for the February 17 and 18, 2014, in order to allow him to conduct his interviews. On February 19, 2014, Kreuiter suspended Plaintiff for the rest of the week.

16. Around 5:00 p.m., on February 20, 2014, Picou terminated Plaintiff based on Kreuiter's interviews with Defendant's employees. Plaintiff was informed that he had supposedly created a "hostile work environment." Plaintiff understood this to be in reference to concerns that Shaina Botka, Project Engineer, had reported during the fall of 2013. Regardless of Botka's concerns, Plaintiff requested and supported giving Botka a 30% raise in September 2013 and another 10% increase in January 2014, both of which were approved. Plaintiff took absolutely no adverse action against Botka during the course of his employment, issuing no verbal warnings, written warnings, or other progressive discipline. Plaintiff even discussed Botka's concerns she later reported to Kreuiter and refuted them, one by one, during a meeting before his termination in mid-February 2014. This meeting concluded with Kreuiter seemingly agreeing that Botka's concerns were not valid. As such, Plaintiff concluded that his termination was retaliation for his report and refusal to engage in illegal conduct.

17.	As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## CLAIMS

### COUNT ONE
### VIOLATIONS OF THE MINNESOTA WHISTLEBLOWER ACT

Plaintiff realleges each and every paragraph of this Complaint.

18.	The Minnesota Whistleblower Act ("MWA") prohibits retaliation against employees for making good-faith reports of violations of law. Minn. Stat. § 181.932, Subd. 1 provides:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) the employee ..., in good faith, reports a violation, or suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
>
> (2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;
>
> (3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

19.	Plaintiff reported what he reasonably and in good faith believed to be violations of statutory and common law.

20.	The laws that Plaintiff believed Defendant violated include, but are not limited to:

6

- Minn. Stat. § 325F.68 – 325F.70 (using and employing fraud or deceptive practices with the intent that others rely on it in connection with the sale of any services);

- Minn. Stat. § 325D.44 (a person engages in deceptive trade practices when, during the course of business, the person engages in conduct that similarly creates a likelihood of confusion or misunderstanding);

- Breach of Contract;

- Fraud;

- Breach of the Implied Covenant of Good Faith and Fair Dealing, and;

- Unjust Enrichment.

21. Defendant retaliated against Plaintiff as a result of his reported objections by terminating his employment.

22. The adverse employment actions as alleged herein constitute violations of the MWA, Minn. Stat. § 181.931 *et seq.*

23. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee.

24. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the MWA, which protects Plaintiff.

25. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged, decreed, and declared to be in violation of the rights secured to Plaintiff by state law.

b. That Defendant be required to make Plaintiff whole for its adverse, retaliatory and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That Plaintiff be awarded front pay and the monetary value of any employment benefits he would have been entitled to as an employee of Defendant.

d. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e. That Plaintiff be awarded compensatory damages in an amount to be determined at trial.

f. That Plaintiff be awarded punitive damages as permitted by statute.

g. That Plaintiff be awarded treble damages as permitted by statute.

h. That the Court award Plaintiff his attorneys' fees, costs and disbursements pursuant statute.

i. That the Court grant such other and further relief as it deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE.

Dated: July 14, 2014                     HALUNEN & ASSOCIATES

*signature*

Clayton D. Halunen, #219721
Ross D. Stadheim, #0392475
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*ATTORNEYS FOR PLAINTIFF*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: July 14, 2014                     *signature*

Ross D. Stadheim